THE ATLANTIC REFINING COMPANY, RELATOR, v. LANDIS TOWNSHIP AND SIMON ALEXANDER, BUILDING INSPECTOR OF LANDIS TOWNSHIP, RESPONDENTS.

Submitted May 4, 1937—Decided March 15, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the relator, *Endicott & Endicott.*

For the respondents, *M. Joseph Greenblatt.*

The opinion of the court was delivered by

HEHER, J. Relator prays for a peremptory *mandamus,* directing the defendant municipality and its building inspector to issue a permit for the erection of a gasoline service station on premises situate within the township, at the intersection of Landis and Myrtle avenues.

There is a dwelling house upon the lands, located seventy-five feet from the southerly line of Landis avenue, the common building line established in accordance with what seems to be a neighborhood development scheme. The titleholder, one Emmeluth, contracted to sell the "lawn" on the Landis avenue side of the property to relator, conditioned upon the procurement of a permit for the erection of a service station of the character mentioned; and, proceeding on the assumption that the clerk was empowered to grant such permits, the latter thereupon, on June 17th, 1936, applied to that officer for the permit. Concededly, there was no written application signed by relator. An oral application made by the latter's representative was reduced to writing by the clerk on one of the forms customarily used for the purpose, but it was not signed on behalf of relator, nor was the signature of its representative appended thereto. The clerk did not issue the permit, although he and relator's representative seemed to regard the writing so made by the clerk as the equivalent of a permit. His non-action is of no consequence for, as will presently appear, he was not vested with the requisite authority; nor were the prerequisites to the issuance of such permit met by relator.

The existent municipal building code, established by ordinance, created the office of "building inspector," and provided, *inter alia,* that no building or structure should be erected, altered or "raised" without a permit from the building inspector; and that the application for such a permit should "be in writing and be signed by the owner and contractor," and set forth "(a) the streets or roads upon which it is proposed to construct such building * * *, and statement of the locality; (b) the distance from the side of the streets or roads to the outer or front wall of such proposed building; (c) a

statement of the materials to be used;" and shall be accompanied (d) "by a plan and specifications of the proposed building * * *." It then went on to provide that "if such application shall show that the proposed building is properly located and in accordance with the laws of the State of New Jersey and the provisions of this and other ordinances of said Township, the Inspector shall grant a permit for the said construction," provided the prescribed fees shall have been paid.

We need not recite the several requirements of this particular ordinance designed in the main to secure the public safety. It suffices to say that the responsibility for the observance of these and the pertinent provisions of other ordinances was placed upon the building inspector.

The application was concededly deficient in all these particulars, unless requirements (a), (b) and (c) were met by accompanying plans and specifications. It was not in writing. As pointed out, relator's representative had no intention of complying with this provision of the ordinance; he considered the document prepared by the clerk—in form an application merely—as a permit issued in response to his oral request.

The claim that the evidence establishes the submission, with the oral application so made, of plans and specifications is utterly devoid of substantial basis. There is not even a scintilla of evidence of the filing or exhibition of specifications. Nor have such been incorporated in the state of the case. It is pertinent to observe that there had been no award of a construction contract. As to the plans, relator's representative testified that what he submitted to the clerk (the latter denied that anything in the nature of a plan was presented to him) was a mere "preliminary plan, as complete survey of property had not been" made, and that the final plan—a blueprint—was submitted not to the clerk but to one of the three building inspectors (of this more hereafter), on July 27th, 1936, when it was proposed to apply to the township committee for "an additional permit."

And on March 10th, 1937, when relator applied to the

building inspector for a permit "pursuant to its application therefor, heretofore filed in the office of the Building Inspector of Landis Township, on June 17th, 1936," there were no plans or specifications on file, nor were any exhibited to the inspector. Even though it was appreciated that this was a major deficiency in the original application, there was no offer of them for the guidance of the then inspector in the determination of the existence of the prerequisites to the issuance of a valid permit. Manifestly, he could not perform the function thus invoked without them.

This omission was obviously the result of a change in the situation, referred to by the building inspector in refusing the application. His denial was grounded upon the failure to comply with the building code adverted to, and for the further reason that under a municipal ordinance adopted in August, 1936, an application for such a permit was required to be made directly to the township committee, whose determination would rest upon different considerations. Plainly, the design of this second application was to vitalize the abortive one presented to the clerk, and thus to escape the consequences of the ordinance placing sole jurisdiction in the governing body, but it had no such effect.

On January 1st, 1936, the township committee, by resolution, created a board of building inspectors (it subsisted for but one year, when a single inspector was appointed) consisting of three members, and invested it with authority "to issue permits for buildings and to perform all other duties, as now required of a Building Inspector;" and relator, pointing to testimony that thereafter "an arrangement had been made, whereby the Township Clerk, for the convenience of the citizens, because the building inspectors were not located in the Township Hall, had established the practice of issuing permits for the building inspectors," argues that the application to the clerk was a substantial compliance with the ordinance, and seems to suggest that, in accordance with the understanding then had, the action of the clerk should be regarded as the equivalent of a permit. We cannot countenance this contention. Assuming, for present purposes, the

validity of the resolution creating the board of building inspectors, that body's grant of authority to the clerk to issue permits constituted an unwarranted delegation of power.

In fine, relator has not sustained the burden of proof of the existence of the prerequisites to the granting of such a permit.

It is elementary that peremptory *mandamus* is ordinarily a discretionary writ that will not be awarded unless there is a clear duty to perform in a definite way the act sought to be commanded. Where on the showing made the right is in doubt, the writ will be refused. *Constam* v. *Darby*, 95 *N. J. L.* 318; *Gleistman* v. *West New York*, 74 *Id.* 74; *Hugg* v. *Ivins*, 59 *Id.* 139; *Kirchgessner* v. *Board of Health*, 53 *Id.* 594; *State* v. *Mayor of Newark*, 35 *Id.* 396.

The rule to show cause is accordingly discharged, with costs.